UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| ROSEMONT HOTELS, INC.,<br>Plaintiff/Counter-Defendants,<br>v.<br>BARTON MALOW COMPANY,<br>Defendant/Counter-Plaintiffs, | |
| BARTON MALOW COMPANY,<br>Third-Party Plaintiff/Counter-Defendant,<br>v.<br>DEL AIR HEATING; AIR CONDITIONING & REFRIGERATION, LLC; GLASS BLOCK WAREHOUSE, L.C.; HABITECH SYSTEMS, INC.; HARTFORD SOUTH, LLC; HEICHEL PLUMBING, INC.; LOTSPEICH CONTRACTING, INC.; and SPECTRA HOLDINGS, INC.,<br>Third-Party Defendants,<br>and<br>CM GLAZING, LLC,<br>Third-Party Defendant/Counter-Plaintiff, | Case No.<br>6:23-cv-1073-RMN |
| LOTSPEICH CONTRACTING, INC.,<br>Fourth-Party Plaintiff,<br>v.<br>GOUDREAU PLASTERING, INC.<br>Fourth-Party Defendant. | |

# ORDER

This matter is before the Court without oral argument on a Motion for Partial Summary Judgment against Plaintiff Rosemont Hotels, Inc. ("Rosemont"), and Third-Party Defendants CM Glazing, LLC, Glass Block Warehouse, L.C., Habitech Systems, Inc., Heichel Plumbing, Inc., and Lotspeich Contracting, Inc. (collectively, the "subcontractors") (Dkt. 238) filed by the Defendant and Third-Party Plaintiff, Barton Malow Company. Rosemont and each subcontractor filed responses in opposition. Dkts. 241 (Heichel Plumbing), 242 (Glass Block), 247 (Rosemont), and 250 (Lotspeich Contracting), 252 (Habitech Systems), 253 (CM Glazing). Barton Malow filed replies to each response. Dkts. 257–60, 264–65. In this order, the Court addresses the issues raised in the motion and responses concerning the subcontracts' indemnification clauses.

## I. BACKGROUND

This case arises from the construction of the Ette Hotel in Kissimmee, Florida, owned by Rosemont. Dkt. 25 at 4981–82. Barton Malow was the project's general contractor. *Id.* In this role, Barton Malow engaged several subcontractors, Dkt. 238 at 12286, including CM Glazing, LLC, Glass Block Warehouse, L.C., Habitech Systems, Inc., Heichel Plumbing, Inc., and Lotspeich Contracting, Inc. *Id.* at 12282. Generally, Rosemont contends the construction was defective in several respects and not in accordance with industry standards. *See* Dkt. 25 at 4982. Barton Malow then brought a

third-party complaint (Dkt. 30) for contractual indemnification against the parties who it subcontracted to perform the construction work.

Each of Barton Malow's subcontracts contain an indemnification provision, as follows:

> 16.1. To the fullest extent permitted by law, Subcontractor shall defend, indemnify and hold harmless Contractor and its agents, employees, owners, officers, members, partners, affiliates, and successors from and against any and all liabilities, claims, causes of action, lawsuits, or expenses arising from (a) Subcontractor's breach or failure to comply with this Subcontract, including any Default, or (b) personal injury or death to any person (including employees of Subcontractor or Subordinate Parties) or property damage (including claims for loss of use), which arise out of or result from, or are in any way connected with, the Work or the operations or acts of commission or omission of Subcontractor, including those of its Subordinate Parties, unless the injuries or damages are caused by the sole or gross negligence, or the willful, wanton or intentional misconduct, of the party seeking to be indemnified.
>
> 16.2. Subcontractor's indemnity obligations shall include, but are not limited to:
>
> 16.2.1. Indemnity for all damages and judgment interest, all costs and fees, including all defense costs, expenses and attorney fees, and all settlement payments relating to or arising out of, resulting from or in any way connected with any claim, cause of action or lawsuit, or proceeding requiring indemnity by Subcontractor.
>
> 16.2.2. All expenses, including costs, expenses and attorney fees, incurred in securing indemnity from

Subcontractor if Subcontractor fails or refuses promptly to fulfill any of the indemnity obligations under this Subcontract.

16.2.3. The obligation to indemnify Contractor for any liability imposed upon Contractor to indemnify and/or defend any and all persons, including but not limited to Owner, from liabilities, claims, causes of action, lawsuits, or expenses arising from or in connection with the Subcontract.

16.2.4. The obligation to indemnify Owner to the same extent and in the same manner as Subcontractor is obligated to indemnify Contractor.

16.2.5. Indemnification for any penalties or fines arising or resulting from Subcontractor's failure to comply with laws or regulations applicable to its Work.

16.2.6. Indemnification for any cost or expense arising or resulting from Subcontractor's infringement of intellectual property rights of others.

16.3 Notwithstanding the foregoing, the Subcontractor's obligation to indemnify shall be limited to the insurance limits required to be carried by the Subcontract, the insurance available to the Subcontractor under the Subcontract, or three times the Subcontract Price, whichever of the foregoing is larger.

16.4 Subcontractor's obligation to indemnify shall not include any obligation to indemnify which is prohibited by applicable law. In the event an arbitration panel or court of competent jurisdiction determines any of the indemnification obligations of this Subcontract are void or unenforceable, in whole or in part, the limitation of liability set forth in section 16.3 shall not apply, and Subcontractor agrees to indemnify Contractor, its officers and employees, from liabilities, damages, losses and costs, including, but

> not limited to, reasonable attorney's fees, to the extent caused by the negligence, recklessness or intentional wrongful misconduct of the Subcontractor and persons employed or utilized by the Subcontractor in the performance of this Agreement.
>
> 16.5 The indemnification rights in this Subcontract shall not be construed to negate, abridge or otherwise reduce any other right or obligation of indemnity which would otherwise exist.
>
> 16.6 Contractor, at its option, may select counsel to defend any claim, cause of action or lawsuit brought against it without impairing any obligation of Subcontractor to provide indemnification.
>
> 16.7. The indemnification provisions contained in this Subcontract shall survive the completion or termination of this Subcontract.
>
> 16.8. These indemnification obligations shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for any Subcontractor under Workers' or Workmen's Compensation Acts, Disability Acts or other Employee Benefit Acts.

Dkts. 30-3 at 7246, 30-5 at 7668, 30-6 at 7875, 30-8 at 8280, 30-9 at 8492.

Barton Malow seeks partial summary judgment finding that each subcontractor has a duty to defend Barton Malow in this litigation based on the provision above, and that this duty arose for each subcontractor except Lotspeich once Barton Malow received a Chapter 558 Notice[1] from

[1] Chapter 558 of the Florida statutes proscribe a "notice and repair process," in which "a property owner (the claimant) must serve a written notice of a claim on the contractor, subcontractor, supplier, or design professional (for

Rosemont.[2] Dkt. 238 at 12282. Alternatively, Barton Malow seeks a finding that this duty arose, at the latest, upon filing of the original complaint here. *Id.* The subcontractors oppose Barton Mallow's requests.

## II. LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo.*

---

ease of reference, the contractor), describing the nature of the alleged construction defect." *Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 832 F.3d 1318, 1320 (11th Cir. 2016), *certified question answered*, 232 So. 3d 273 (Fla. 2017). Pre-suit notices made pursuant to this process are therefore referred to as "Chapter 558 Notices" or sometimes "558 Notices."

[2] Barton Malow does not assert a common law indemnity claim.

*Ass'n, Inc. v. Selective Ins. Co. of Se.*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252).

## III. ANALYSIS

This order proceeds in two parts. First, the Court construes the subcontracts to determine whether the duty to defend is separate from the duty to indemnify. The Court then construes the indemnification provision to determine the triggering event for the duty to defend.

### A. Severability of the Duty to Defend and Duty to Indemnify

In broad strokes, Barton Malow seeks summary judgment on the issue of each subcontractor's duty to defend. The subcontractors argue in opposition that the duty to defend and the duty to indemnify are inseverable. *See* Dkts. 241 at 13243–44, 242 at 13256–59, 250 at 16637–38, 252 at 16650–54, 253 at 16663–65. According to the subcontractors, this means that the duty to defend is not triggered until the duty to indemnify is triggered, and that requires a judgment on the claims against Barton Malow and a showing that the subcontractor against whom indemnity is sought

breached their subcontract.[3] *See* Dkts. 241 at 13244–46, 242 at 13259–60, 250 at 16638, 252 at 16654–55, 253 at 16664.

To begin, Florida law recognizes two duties which may arise in the context of contractual indemnification agreements: "1) the duty to indemnify and hold harmless the indemnitee, and 2) the duty to defend the indemnitee." *Nat'l R.R. Passenger Corp. v. Rountree Transp. & Rigging, Inc.*, 286 F.3d 1233, 1261 (11th Cir. 2002). A duty to defend is triggered not by the likelihood of success of a claim brought against the indemnitee, but by the nature of the claim alleged against them. *Id.* The duty to defend thus arises if the underlying facts of the claim against the indemnitee can be fairly read to support a claim covered by the indemnification provision. *Id.* If a lawsuit involves a covered claim and a claim not covered by the indemnity provision, then typically the duty to defend will still extend to the entire

[3] Glass Block also argues that the duty to defend Barton Malow will create an unwaivable conflict of interest by requiring Barton Malow and Glass Block to argue each other's negligence to shift liability to the other. Dkt. 242 at 13268–71. That argument is implausible. As Barton Malow notes in its reply, the subcontract does not require the same lawyer or law firm to defend both parties. Dkt. 258 at 17326. And the subcontracts provide that Barton Malow may select counsel to defend it against "any claim, cause of action or lawsuit brought against it without impairing any obligation of Subcontractor to provide indemnification." Dkt. 258 at 17326 (Section 16.6).

lawsuit. *Id.* (citing *Metro. Dade Cnty. v. Fla. Aviation Fueling Co.*, 578 So. 2d 296, 298 (Fla. 3d DCA 1991)).[4]

The subcontractors' arguments rest primarily on two Florida cases. The first is *Barton Malow Company v. Grunau Company*, 835 So. 2d 1164 (Fla. 2d DCA 2002). There, Barton Malow sued several subcontractors for work performed during the construction of a courthouse. *Id.* at 1165. Shortly after construction was completed and the building occupied, numerous court employees sued Barton Malow for various health problems allegedly caused by the negligent design and construction of the building. *Id.* Barton Malow settled the employees' claims and sought to recover some of its costs from its subcontractors under an indemnity provision. *Id.*

On summary judgment, the trial court considered whether the indemnity provision of the subcontracts violated section 725.06 of the Florida Statutes. 835 So. 2d at 1165–66. The trial court granted the motion in part, finding that the indemnity provision was unenforceable because, contrary to the requirements of section 725.06, the provision required the subcontractors to indemnify Barton Malow for the damages it paid to the employees. *Id.* The trial court also found the indemnity provision included a duty to defend that was severable from the duty to indemnify. *Id.* at 1166.

---

[4] Florida is not the only state that recognizes "the duty to defend and the duty to indemnify are distinct concepts." *N. Illinois Gas Co. v. USIC, LLC*, No. 21-13377, 2023 WL 2977784, at *13 (11th Cir. Apr. 18, 2023) (applying Georgia law to an alleged breach of a services agreement).

After a bench trial, although the trial count found in favor of Barton Malow, the court apportioned Barton Malow's defense costs and attorney's fees based on each subcontractors' contribution to the overall settlement with the court employees. *Id.* Barton Malow then appealed. *Id.*

The appellate court first noted the limited nature of the appeal, which addressed only the "narrow issue" of "whether the duty to pay defense costs and attorneys' fees is severable from the duty to indemnify for damages under the language of Barton-Malow's subcontract agreement." 835 So. 2d at 1166. The court first turned to the contract language. *Id.* The agreements required each subcontractor to "protect, defend, indemnify and save harmless . . . Barton-Malow Company . . . from and against all losses, claims, demands, payments, damages, suits, actions, attorney's fees, recoveries and judgments of every nature and description brought or recovered against . . . Barton-Malow Company." *Id.* at 1167. The court construed this provision wholistically, reasoning that "nothing . . . that indicates that the parties intended the duty to defend to be severable from the remainder of the duties in the indemnity provision." *Id.* For this reason, and because it was unpersuaded by Barton Malow's other arguments, the appellate court reversed. *Id.* at 1167–68.

The subcontractors also rely on *Westinghouse Electric Corporation v. Prudential Insurance Company of America*, 547 So. 2d 721 (Fla. 1st DCA 1989). Westinghouse appealed a judgment awarding Prudential attorney's

fees and costs for indemnity based on the trial court's interpretation of the following contract language:

> The subcontractor agrees to defend, indemnify and save harmless the Contractor and the Owner, their agents and employees, from and against all claims, damages, losses or expenses (including costs and attorney's fees) *by reason of liability imposed by law* upon the Contractor or Owner for damages because of bodily injury, including death at any time resulting therefrom, sustained by any person or persons, or on account of damage to property, including loss of use thereof, arising out of or in consequence of the performance of the Work, provided such injury to persons or damage to property is due or claimed to be due in whole or in part to the wrongful or negligent act or omission of the Subcontractor, his employees or agents.

*Id.* at 721 (emphasis in original). The appellate court disagreed. *Id.* at 721–22. That court thought the quoted provision "clearly limits liability for indemnification for all claims, damages, losses or expenses (including costs and attorney's fees) to situations where the liability has been imposed by law such as when a judgment has been entered against the indemnitor." *Id.* at 721. In other words, in the court's view, the emphasized limitation applied equally to both obligations. *Id.*

Going further, the court noted that even if the provision was ambiguous, application of the Florida rules of construction of contracts would lead to the same result. *Westinghouse Elec.*, 547 So. 2d at 722. The court reasoned first that, because this provision was "given as an incident of

a contract, the main purpose of which is not indemnification," Florida law requires "the indemnity provision [to] be construed strictly in favor of the indemnitor."[5] *Id.* (citing *Sol Walker & Co. v. Seaboard Coast Line R.R. Co.*, 362 So. 2d 45, 49 (Fla. 2d DCA 1978)). The court also reasoned that another rule of construction—requiring a contract to be construed against the party who drafted it—supported this narrower interpretation. *Id.*

In response, Barton Malow points to the provision at issue in *Eckerd Youth Alternatives, Inc. v. Devereux Foundation, Inc.*, 366 So. 3d 1154 (Fla. 2d DCA 2023), which Barton Malow contends is "nearly identical" to the language used in the subcontracts at issue here. *See, e.g.*, Dkt. 264 at 17617–18. In that case, the Florida Department of Children and Families "delegated to Eckerd the responsibility to provide for the welfare of some children in the State's foster care system." 366 So. 3d at 1155. "Eckerd, in turn, contracted with Devereux to provide these services." *Id.* The subcontract with Devereux contained the following indemnification provision:

> To the extent permitted by Florida Law, the Provider [Devereux] shall indemnify, save, defend, and hold Eckerd and the Department harmless from any and all claims, demands, actions, causes of action of whatever nature or character, arising out of or by reason of the execution of this agreement or performance of the services provided herein. It is understood and agreed that [Devereux] is not required to indemnify Eckerd or

[5] Prudential is recognized in the opinion as "owner" and Westinghouse as "subcontractor." *Westinghouse Elec.*, 547 So. 2d at 721.

> Department for claims, demands, actions, or causes of action arising solely out of Eckerd's or the Department's negligence.

*Id.* at 1155–56 (alterations in original). The trial court awarded summary judgment to Devereux on crossclaims seeking to enforce this indemnification obligation. *Id.* at 1155.

Once again, the issue on appeal was limited. 366 So. 3d at 1158. The appellate court addressed only whether Eckard had sufficiently invoked Devereux's duty to provide a defense pursuant to the indemnity provision of the contract. *Id.* The appellate court did not construe the indemnity provision.[6] *Id.* Instead, the court held that, contrary to the trial court's determination, Eckard had properly tendered the defense of the lawsuit to Devereux, which then breached the agreement when it declined to assume the defense. *Id.*

These cases merely illustrate the application of Florida law. In sum, Florida recognizes that the duty to defend and duty to indemnify are separate obligations. *Nat'l R.R. Passenger Corp.*, 286 F.3d at 1261–62. But parties to a contract may modify these default rules. *Id.* at 1262 (reasoning that the "plain language of the indemnification provision in the Purchasing Agreement trumps the rules that would otherwise apply in the duty-to-defend context"). Here, because the parties advance different constructions

---

[6] Devereux waived its argument involving the ambiguity of the contract by raising the issue for the first time on appeal. 366 So. 3d at 1157 n.1.

of the subcontracts, the pertinent question is whether the subcontracts at issue modify the default rules set by Florida law.

Somewhat simplified, the indemnity provision in each subcontract provides that each subcontractor "shall defend, indemnify and hold harmless" Barton Malow in three circumstances: (1) when the subcontractor breaches the subcontract; (2) if there is an injury or death; or (3) when there is property damage. *See, e.g.*, Dkt. 30-3 at 7246. The provision further limits the subcontractor's obligations concerning personal injuries or property damage (circumstances (2) and (3)) to only those claims arising or resulting from, "or are in any way connected with," the subcontractor's acts or omissions. *Id.* For simplicity, the Court will call these circumstances the liability provisos.[7]

The Court's first task in construing this provision is to determine whether it is unambiguous or ambiguous on its face. *See Team Land Dev., Inc. v. Anzac Contractors*, Inc., 811 So. 2d 698, 699–700 (Fla. 3d DCA 2002) (the initial determination of whether a contract term is ambiguous is a question of law for the court) (citations omitted). In so doing, the Court applies the pertinent rules of construction.

---

[7] The subcontract also includes a carve-out from the liability provisos for personal injuries or property damage for injuries or damage caused by the negligence or intentional misconduct of the party seeking indemnification. Dkt. 30-3 at 7246.

In Florida, a court must first examine the plain language of the contract for evidence of the parties' intent. *Perez-Gurri Corp. v. McLeod*, 238 So. 3d 347, 350 (Fla. 3d DCA 2017). The parties' express intent controls. *Moore v. Stevens*, 106 So. 901, 903 (Fla. 1925). When construing a contract, the Court must look to "the logical meaning and intent of the contract," *Nat'l R.R. Passenger Corp.*, 286 F.3d at 1262 (quoting *Misener Marine Constr. Co. v. Southport Marine, Inc.*, 377 So. 2d 757, 758 (Fla. 2d DCA 1979)), and give the language used its "natural or most commonly understood meaning," *Id.* (quoting *Tropabest Foods, Inc. v. Florida Dep't of Gen. Servs.*, 493 So.2d 50, 51–52 (Fla. 1st DCA 1986)).

The clause here is unambiguous. The series "defend, indemnify and hold harmless" is followed by three liability provisos. In grammatical terms, each liability proviso is a postpositive modifier. Reading the entire provision in the most natural way, the Court concludes that the three liability provisos limit both the subcontractors' duty to defend and their duty to indemnity, thereby modifying "the rules that would otherwise apply in the duty-to-defend context." *Nat'l R.R. Passenger Corp.*, 286 F.3d at 1261–62; *see also Westinghouse Elec.*, 547 So. 2d at 721–22. But the language used does not evince an intent to modify any other aspect of Florida law, including that each duty is a separate obligation. And indeed, Section 16.6 implicitly acknowledges that the duties are separate and distinct legal obligations. Dkt. 30-3 at 7248.

Even if the indemnity provision was ambiguous, application of well-established rules of construction reaches the same result. Florida applies the series-qualifier canon. *See, e.g.*, *Beach Towing Servs., Inc. v. Sunset Land Assocs., LLC*, 278 So. 3d 857, 861 (Fla. 3d DCA 2019). That canon provides that, "when there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series." *Id.* (quoting A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 147–51 (2012)). "[F]or example, in the phrase 'a wall or fence that is solid,' the postpositive modifier 'that is solid' should be read as modifying both 'wall' and 'fence' to mean that both the wall as well as the fence must be solid." *Id.*

If the series-qualifier canon is applied to Section 16.1, each liability proviso limits both a subcontractor's obligation to defend and its obligation to indemnify. There is no indication from the provision's language that suggests the liability provisos are limited to just one part of the modified series.[8] Nor is there any indication that the provision is intended to modify Florida's recognition that such duties are distinct.

---

[8] The Court has considered, but rejects, application of the series-qualifier canon's foil: the last-antecedent rule. That rule provides that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Lockhart v. United States*, 577 U.S. 347, 351 (2016). Reading a sentence this way "reflects the basic intuition that when a modifier appears at the end of a list, it is easier to apply that modifier only to the item directly before it." *Id.* But the last-antecedent rule, "as with

Moreover, the Court is not persuaded by the subcontractors' severability argument.[9] Even assuming the duty to defend cannot be severed from the duty to indemnify, as some of the subcontractors contend, section 16.3 of the subcontract incorporates by reference the monetary limits required by Florida law. *See, e.g.*, Dkt. 30-3 at 7246 (limiting indemnification obligation to the insurance limits required by the contract); *see also* Dkt. 30-3 at 7240 (acceptance of the requirements in "Document No. 2-FL, Insurance Requirements"), 7249–50 (Barton Malow Company Document No. 2-FL). And so, the indemnity provision is not void for lack of the required limitation.

---

any canon of . . . interpretation, . . . is not an absolute and can assuredly be overcome by other indicia of meaning." *Id.* at 352 (internal quotation and citation omitted).

Here, the series is a list of simple items with parallel structure without internal modifiers. And so, the text, grammar, punctuation, and context of the indemnification provision draw one to the conclusion that both obligations are modified by the liability provisos.

[9] Glass Block and Lotspeich argue that the duty to indemnify included in the subcontract is void and unenforceable due to lacking a monetary limitation on the indemnification obligation and that, because the duties are inseverable, the duty to defend is also void. Dkt. 242 at 13262–63; Dkt. 250 at 16638–40.

### B. Triggering Event for the Duty to Defend

Barton Malow also argues that (for all subcontractors except Lotspeich)[10] the subcontractors' duty to defend ripened once Barton Malow received a Chapter 558 Notice from Rosemont. Dkt. 238 at 12282. The subcontractors disagree, arguing that their obligations to defend were not triggered until the complaint was filed in this case. *See* Dkts. 241 at 13246–48, 242 at 13265–68, 252 at 16555–56, 253 at 16665–66.

The Florida Supreme Court has held that whether a Chapter 558 Notice triggers a duty to defend is a matter of contract interpretation. *See Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 232 So. 3d 273, 276 (Fla. 2017). Barton Malow argues that, like in *Altman*, the notice it received constitutes a "claim." Dkt. 238 at 12300. There, an insurance policy limited the insurance company's duty to defend to "any 'suit' seeking damages." *Altman*, 232 So. 3d at 275. Under the policy, the term "suit" referred only to a "civil proceeding." *Id.* at 277. The court then determined that the notice and repair process provided by Chapter 558 was not a civil proceeding. *Id.* at 277–78.

The Court also noted, however, that the policy expressly broadened the definition of "suit" to encompass Chapter 558 notices. *Altman*, 232 So. 3d at 279. Part of the policy broadened "the definition of 'suit' to 'include[ ],' '[a]ny other alternative dispute resolution proceeding in which such damages

---

[10] Barton Malow contends that this duty arose for Lotspeich upon Rosemont's filing of its complaint. Dkt. 238 at 12301.

are claimed and to which the insured submits with our consent.'" *Id.* at 278 (alterations in the original). As the court found, the Chapter 558 process was an "alternative dispute resolution proceeding" in which a claimant asserted a claim for damages. *Id.* at 279. For this reason, the court concluded the Chapter 558 process fell within the policy's definition of "suit." *Id.*

Here, as the subcontractors note correctly, the subcontracts do not expressly cover administrative, pre-suit demands. Dkts. 241 at 13247–48; 252 at 16656. The definition of "claim," found in Section 1.2 of the subcontracts, states a "claim" is "any demand or request by Subcontractor for extra payment, extension of time, damages, or other relief in connection with the Subcontract." Dkt. 30-3 at 7242.

Barton Malow's response to this is simple: it used the term "claim" to mean different things in different parts of the subcontracts.[11] It argues the uncapitalized "claim" in Section 16 (the indemnification section), as well as the surrounding context to its usage, demonstrate that the parties did not intend the definition of "claim" found in Section 1.2 to apply. Dkts. 259 at 17337, 264 at 17619–20.

---

[11] The subcontract itself suggests that it was drafted by Barton Malow. The subcontracts are printed on Barton Malow letterhead. Dkt. 30-3 at 7240. And they are issued as orders to a vendor with required conditions unilaterally imposed by Barton Malow. *See, e.g.*, *id.* ("Acceptance of this order constitutes an agreement to the terms and conditions set forth in each page of the Subcontract Order as as contained in Barton Malow Company" documents).

Barton Malow is correct. The term "Claim" defined in Section 1.2 contemplates only those claims brought by a subcontractor against Barton Malow. *See, e.g.*, Dkt. 30-3 at 7242. And the term claim is not used consistently throughout the subcontract. Sometimes it is capitalized, *see, e.g.*, *id.* at 7248 (Section 22), sometimes it is not, *see, e.g.*, *id.* at 7246 (Section 16.6). Sometimes it denotes only claims made by the subcontractor, *see, e.g.*, *id.* at 7248 (Section 22), and sometimes it appears to refer to claims made by others against Barton Malow, the subcontractor, or both, *see, e.g.*, *id.* at 7246 (Section 16.6).

The dispute therefore turns on the meaning of the subcontract's indemnification provision. Yet Barton Malow does not provide a detailed argument concerning the interpretation of that provision, stating only that a Chapter "558 Notice constitutes a 'claim' as envisioned by the plain language" of the subcontract. Dkt. 238 at 12301. This limited edification is unhelpful.[12] For their part, the subcontractors contend only that the term "claim" does not embrace a Chapter 558 notice nor do any of the other terms—liabilities, causes of action, lawsuits, and expenses—used in the indemnification provision. *See, e.g.*, Dkt. 241 at 13247–48.

The Court begins with the language of the contract. *Perez-Gurri Corp.*, 238 So. 3d at 350. Here, as explained above, the meaning of terms

---

[12] Barton Malow cannot rely on the specific, narrow holding in *Altman* because the insurance policy at issue there contained a provision that is not included in the subcontracts here.

used in the subcontract varies from section to section. The Court therefore focuses on the language used in Section 16, relying on the text, grammar, punctuation, context, and well-established rules of construction.[13]

First, the text. Subsection 1 refers to "any and all liabilities, claims, causes of actions, lawsuits, or expenses." Subsection 2 refers variously to "any claim, cause of action or lawsuit, or proceeding requiring indemnity" and "liabilities, claims, causes of action, lawsuits, or expenses." And subsection 6 refers to "any claim, cause of action or lawsuit."

These four noun phrases, although varied, appear to be used interchangeably within Section 16. Nothing suggests that each phrase means something different from the phrase used in another subsection. For this reason, the Court concludes the noun phrases should be construed together and identically.

Second, the use of "any and all" and "any" in some places suggests the parties wished to confer an "expansive meaning, that is 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)). But "any and all" and "any" modify the noun phrases that follow and so are informative only to the extent that they show an intent to include those items

[13] All quotes from Section 16 in this section of the order are from docket number 30-3 at 7246.

listed in the noun phrases.[14] *Cf. Wisconsin Cent. Ltd v. United States*, 585 U.S. 274, 279 (2018) (contrasting "money remuneration," which limits the form of remuneration, with "all remuneration," which does not).

Next, the court turns to the meaning of the terms used in each noun phrase. Florida courts look to dictionaries to determine the plain and ordinary meaning of words. *See, e.g.*, *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1024 (11th Cir. 2014). Liability means "something for which one is liable." Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/liability (last accessed Nov. 5, 2026). A claim is "a demand for something due or believed to be due" or "a right to something." *Id.* at https://www.merriam-webster.com/dictionary/claim (last accessed Nov. 5, 2026). A "cause of action" is a noun phrase that refers to "the grounds (such as violation of a right) that entitle a plaintiff to bring a suit." *Id.* at https://www.merriam-webster.com/dictionary/cause%20of%20action (last accessed Nov. 5, 2026). Lawsuit means "a suit in law" or "a case before a court." *Id.* at https://www.merriam-webster.com/dictionary/lawsuit (last accessed Nov. 5, 2026). A proceeding is a "legal action." *Id.* at https://www.merriam-webster.com/dictionary/proceeding (last accessed Nov. 5, 2026). And an

---

[14] "Any" and "any and all" are premodifiers that, consistent with the series-modifier cannon, apply to each term in the subsequent noun phrase. *See Martinez v. Ross Dress for Less, Inc.*, No. 1:23-cv-22894, 2024 WL 6968773, at *1 (S.D. Fla. Jan. 16, 2024) (citing A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 147 (2012)).

expense is a "financial burden or outlay," "an item of business outlay chargeable against revenue for a specific period," "something expended to secure a benefit or bring about a result," "a cause or occasion of expenditure," or "a loss, detriment, or embarrassment that results from some action or gain." *Id.* at https://www.merriam-webster.com/dictionary/expense (last accessed Nov. 5, 2026).

The scopes of these terms vary. For instance, liability is a broad term, while causes of action, lawsuits, and proceedings are more limited. To interpret the scope of the noun phrases used in Section 16, the Court relies on the canon of *noscitur a sociis*, which teaches that a word is "given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008). Application of this canon avoids ascribing to one word a meaning that is so broad that it is inconsistent with "the company that it keeps." *Fischer v. United States*, 603 U.S. 480, 487 (2024) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). Application of this canon suggests the meaning of the broad terms used in the noun phrases in Section 16 are narrowed by the more limited terms.

And another part of Section 16—subsection 4—provides additional context. There the parties refer to determinations made by "an arbitration panel or court of competent jurisdiction." The Court infers from this reference then that the phrases used in Section 16 refer to claims and liabilities made in or are associated with legal proceedings such as lawsuits or arbitration proceedings.

Taken together, and based on the text, grammar, punctuation, and context used in Section 16, the Court concludes the obligations imposed in that section of the subcontracts are limited to claims raised and adjudicated in lawsuits and arbitration proceedings.[15]

Having interpreted Section 16, the next question is whether the Chapter 558 process is a legal proceeding like a lawsuit or arbitration. That question was answered in *Altman* when the Florida Supreme Court determined that the notice and repair process provided by Chapter 558 was not a civil proceeding. 232 So. 3d at 277–78. Because the Chapter 558 process is not a proceeding under Florida law, it does not trigger the obligations imposed by Section 16 of the subcontracts.

In sum, the Court construes Section 16.1 of the subcontract as imposing two separate legal obligations on the subcontractors, a duty to defend and a duty to indemnify. Each duty is limited to claims raised in, or liabilities imposed by, arbitration or legal proceedings. And each duty is limited further to only those circumstances identified in the three liability provisos.

---

[15] This construction is also consistent with the rules of construction applied in *Westinghouse Electric*. *See* 547 So. 2d at 722. This is so because the Court's interpretation of Section 16 is construed in favor of the indemnitors. *See id.* And given the subcontracts were drafted by Barton Malow, the Court's interpretation of Section 16 is also consistent with the rule of construction requiring a contract to be construed against the party who drafted it. *See id.*

Accordingly, it is **ORDERED**:

1. The Motion for Partial Summary Judgment (Dkt. 238) is **GRANTED in part** and **DENIED in part**;

2. First, the Court concludes that Section 16 of the subcontracts imposes two separate legal obligations on each subcontractor, a duty to defend and a duty to indemnify. Each duty is limited to claims raised in, or liabilities imposed by, arbitration or legal proceedings. And each duty is limited to only those circumstances identified in the three liability provisos;

3. Because the Chapter 558 process is not a proceeding under Florida law, it does not trigger the duties to defend or indemnify imposed by Section 16; and

4. To the extent that the Motion seeks summary judgment on any issue not addressed in this order (or the other orders issued this day), the Motion is denied.

**DONE** and **ORDERED** in Orlando, Florida, on November 9, 2026.

ROBERT M. NORWAY
*United States Magistrate Judge*

Copies to:

Counsel of Record