UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| ROSEMONT HOTELS, INC.,<br>Plaintiff/Counter-Defendants,<br>v.<br>BARTON MALOW COMPANY,<br>Defendant/Counter-Plaintiffs, | |
| BARTON MALOW COMPANY,<br>Third-Party Plaintiff/Counter-Defendant,<br>v.<br>DEL AIR HEATING; AIR CONDITIONING & REFRIGERATION, LLC; GLASS BLOCK WAREHOUSE, L.C.; HABITECH SYSTEMS, INC.; HARTFORD SOUTH, LLC; HEICHEL PLUMBING, INC.; LOTSPEICH CONTRACTING, INC.; and SPECTRA HOLDINGS, INC.,<br>Third-Party Defendants,<br>and<br>CM GLAZING, LLC,<br>Third-Party Defendant/Counter-Plaintiff, | Case No. 6:23-cv-1073-RMN |
| LOTSPEICH CONTRACTING, INC.,<br>Fourth-Party Plaintiff,<br>v.<br>GOUDREAU PLASTERING, INC.<br>Fourth-Party Defendant. | |

# ORDER

This matter is before the Court without oral argument on Defendant and Third-Party Plaintiff Barton Malow Company's Motion for Partial Summary Judgment against Plaintiff Rosemont Hotels, Inc., and Third-Party Defendants CM Glazing, LLC, Glass Block Warehouse, L.C., Habitech Systems, Inc., Heichel Plumbing, Inc., and Lotspeich Contracting, Inc. (Dkt. 238), as well as Glass Block Warehouse's Motion for Partial Summary Judgment against Barton Malow Company (Dkt. 239). Rosemont filed a response to Barton Malow's motion (Dkt. 247), and Barton Malow filed a response to Glass Block's motion (Dkt. 254). Barton Malow filed a reply to Rosemont's response (Dkt. 260). Glass Block did not file a reply in support of its motion, and the time to do so has passed. *See* Dkt. 164 ("CMSO") at 9518 (setting a 14-day deadline to reply in support of a motion for summary judgment).

This Order addresses the issue of the economic loss rule raised in both motions, as well as Glass Block's argument that Barton Malow cannot show Glass Block's work altered Barton Malow's lost profits.

## I. BACKGROUND

This case arises from the construction of the Ette Hotel in Kissimmee, Florida. Dkt. 25 at 4981–82. Barton Malow was the project's general

contractor. *Id.* Rosemont sued Barton Malow[1] alleging various causes of action related to the construction of the hotel. *Id.* at 4979–82. Count III of Rosemont's Amended Complaint asserts a claim of negligence against Barton Malow, alleging that Rosemont suffered property damage and related expenses as well as lost profits due to Barton Malow's negligent acts or omissions. *Id.* at 4989–90.

Barton Malow argues that there is no evidence it committed a breach of duty independent of its breach of contract, and thus that Rosemont's negligence claim is barred by the economic loss rule. Dkt. 238 at 12291–97. In its response, Rosemont argues that the economic loss rule is inapplicable because the rule is limited to the products liability context, and because Barton Malow engaged in tortious conduct independent of its contractual relationship with Rosemont. Dkt. 247 at 16559–16560.

Barton Malow engaged several subcontractors to complete various portions of the Ette Hotel project, including Glass Block Warehouse. Dkt. 30 at 7189–7202. Following Rosemont's complaint, Barton Malow brought a third-party complaint against the subcontractors seeking contractual indemnification. *Id.* at 7178. Glass Block filed its own motion for partial summary judgment against Barton Malow, in which it argues that Barton Malow does not provide sufficient evidence to show that Glass

[1] The Amended Complaint also includes Jonathan Nehmer & Associates, Inc., and RTM Engineering Consultants, LLC as Defendants, both of whom have since been terminated from the case. *See* Dkt. 118.

Block's work had any impact on Barton Malow's lost profits. Dkt. 239 at 12443. Glass Block also argues that Barton Malow's third-party claims against it are barred because Rosemont's negligence claim is barred under the economic loss rule. *Id.* at 12444–49.

## II. LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Se.*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be

evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252).[2]

## III. ANALYSIS

### A. Applicability of the Economic Loss Rule

The economic loss rule prohibits tort actions if the only damages suffered by the plaintiff are economic losses. *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 401 (Fla. 2013). In Florida, the economic loss rule is limited to the products liability context. *Id.* at 407. In products liability cases, the rule prohibits tort actions when a product fails in such a way that damages only itself, causing economic loss but not causing personal injury or damage to other property. *Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1246 (Fla. 1993). A

[2] According to the Eleventh Circuit, a more relaxed summary judgment standard applies to cases that proceed to trial without a jury. *See Coats & Clark, Inc. v. Gary*, 755 F.2d 1506, 1509–10 (11th Cir. 1985) (citing *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123–24 (5th Cir. 1978)). In a non-jury setting where "there are 'no issues of witness credibility,' the Court may make factual determinations and draw inferences at the summary judgment stage based on the affidavits, depositions and other evidence in the record, because a 'trial on the merits would reveal no additional data' nor 'aid the determination.'" *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1251 (11th Cir. 2016) (quoting *Nunez*, 572 F.2d at 1123–24). Because the Court believes credibility issues are raised by the record here, it applies the summary judgment standard for cases that will be tried before a jury.

plaintiff who suffers purely economic harm due to purchasing a defective product must seek remedies in contract law rather than tort law. *Id.*

Before *Tiara*, the Florida Supreme Court applied the economic loss rule to condominiums and homes in *Casa Clara*, holding that damage to these structures caused by using substandard concrete during construction was economic loss. *Casa Clara*, 620 So. 2d at 1247. Cases following *Tiara* have reaffirmed the holding in *Casa Clara*, clarifying that buildings such as homes and condominiums are still considered products under Florida law and are thus subject to the economic loss rule. *See, e.g.*, *2711 Hollywood Beach Condo. Ass'n, Inc. v. TRG Holiday, Ltd.*, 307 So. 3d 869 (Fla. 3d DCA 2020) ("In *Casa Clara*, the Florida Supreme Court held that to the extent a products liability claim arises in the context of real estate, the economic loss rule applies."). Damage caused to a building by improper construction of its component parts is not damage to "other property," because the building itself, including all its component parts, is considered the product. *See id.* at 870; *see also Fishman v. Boldt*, 666 So. 2d 273, 274 (Fla. 4th DCA 1996) (finding that a tort claim for damage to a home, pool, and patio caused by negligent construction of a seawall was barred by the economic loss rule because the product purchased by the appellants was the home with all its component parts, and thus no "other property" was damaged).

While no case provided by the parties or that the Court could locate in its own research has applied Florida's economic loss rule directly to the

construction of a hotel building, Glass Block argues that the doctrine "naturally extends to hotel buildings." Dkt. 239 at 12447. The Court agrees. Florida precedent clearly establishes that buildings are treated as products to which the economic loss rule applies. There is no reason for a hotel, or any other commercial building, to be treated differently. Because Rosemont's negligence claim only alleges damage to the Ette Hotel project itself, and expenses and lost profits which relate to its faulty construction, the economic loss rule applies.

### B. Independent Tort Doctrine

Rosemont does not argue that the economic loss rule should not extend to a hotel building. Rather, Rosemont's contends the rule is inapplicable because of the independent tort doctrine, which holds that a plaintiff cannot recover in tort for a contract dispute unless the tort is independent of any breach of contract. *SBP Homes, LLC v. 84 Lumber Co.*, 384 So. 3d 241, 247 (Fla. 4th DCA 2024). Rosemont argues that Barton Malow taking on responsibility for designing the HVAC system violates a duty independent of and outside the scope of the contract, thus allowing for recovery under tort law.

In other words, the economic loss rule does not bar causes of action based upon torts independent of a contractual breach, even when a breach of contract action exists. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996). Tort actions are permissible for intentional or negligent acts "considered to be independent from acts that breached the

contract." *Id.* And so, even though the economic loss rule would ordinarily apply to a building such as the Ette Hotel, if Barton Malow's actions constitute an independent tort, Rosemont's negligence claim would not be barred by the economic loss rule.

To constitute an independent tort, the conduct must be "extraneous" to the breach of contract. *See Behrman v. Allstate Ins. Co.*, 388 F. Supp. 2d 1346, 1349–50 (S.D. Fla. 2005), *aff'd sub nom. Behrman v. Allstate Life Ins. Co.*, 178 Fed. App'x 862 (11th Cir. 2006) (holding that the economic loss rule barred several of plaintiff's tort claims, including negligent hiring, fraud in the inducement, and negligent misrepresentation, because they related to the alleged breach of contract). If the facts underlying a breach of contract action are "indistinguishable" from an alleged tort, and the alleged tort does not cause harm "distinct from that caused by the breach of contract," a plaintiff is barred from bringing a separate tort action. *Eye Care Int'l, Inc. v. Underhill*, 92 F. Supp. 2d 1310, 1315 (M.D. Fla. 2000); *see also Sattiewhite v. Kula & Samson, LLP*, 1:12-cv-24178, 2013 WL 12091098, at *4 (S.D. Fla. Feb. 25, 2013) (holding that where a tort claim is "inextricably intertwined with and dependent upon" a breach of contract claim, it will be barred by the economic loss rule). An independent tort thus "requires proof of facts separate and distinct from the breach of contract." *HTP, Ltd.*, 685 So. 2d at 1239.

The independent tort doctrine is satisfied[3] when a duty arises from a source external to the contract, such as in professional negligence cases. *Travelers Indem. Co. of Connecticut v. Richard McKenzie & Sons, Inc.*, 326 F. Supp. 3d 1332, 1346 (M.D. Fla. 2018), *aff'd*, 10 F.4th 1255 (11th Cir. 2021). When "society imposes a tort duty" such as that on lawyers and doctors to non-negligently perform their professional duties, a tort claim may be permissible. *See id.*; *see also Atout as Tr. of HHM Land Tr. Dated Oct. 29, 2013 v. Rozanc*, No. 6D2023-2302, 2026 WL 2207239, at *7 (Fla. 6th DCA July 31, 2026) ("[c]ontracting with a real estate management company to manage real property is much different than contracting with a professional engineer to design a suspension bridge that thousands will use every day[.]"); *Moransais v. Heathman*, 744 So. 2d 973 (Fla. 1999) ("While provisions of a contract may impact a legal dispute, including an action for professional services, the mere existence of such a contract should not serve per se to bar an action for professional malpractice.").

Chapter 61G15 of the Florida Administrative Code allows parties in an engineering contract to contractually establish a standard of care, though they may not agree to a standard of care that is lower than that set out in the Code. *Orlando Health, Inc. v. HKS Architects, Inc.*, No. 6:24-cv-693, 2026

---

[3] This has also been framed as an exception to the independent tort doctrine where public policy considerations override the ordinary application of the doctrine. *See Atout*, 2026 WL 2207239, at *7.

WL 265982 at *6 (M.D. Fla. Feb. 2, 2026). Rosemont's contract with Barton Malow provides, in relevant part:

> The Contractor shall perform and complete its obligations under this Contract through the exercise of care, diligence and skill expected of a contractor (i) that is experienced and skilled in the construction of Hotel & Hospitality complexes of the quality, complexity, size, nature, site and location comparable to the Project, (ii) that has constructed projects from drawings and specifications that are similar to the Construction Documents for this Project, (iii) that is familiar with (a) the site upon which the Project is to be constructed and (b) local conditions under which the Work is to be performed (such care, diligence, and skill is the "Standard of Care").

Dkt. 25-1 at 4999.

Rosemont argues that Barton Malow took "extra-contractual action" by unilaterally substituting the HVAC system and assuming design responsibility for the system, which it alleges "fell outside Barton Malow's contractual scope and duties, giving rise to an independent legal duty which it breached." Dkt. 247 at 16566. Barton Malow does not disagree that it can be deemed to have committed an independent tort if it improperly took on responsibility for designing the HVAC system. Dkt. 238 at 12293–94. It argues instead that Rosemont cannot prove that it did so. *Id.* ("To prove that an independent tort exists, Rosemont must provide proof that BMC became a delegated engineer on the Project and engaged in professional design activities mutually agreed upon between the parties to prove that BMC

should be held to a standard of care greater than that set forth in the contract, which it cannot do.”).

Barton Malow contends that it is not a licensed engineer in Florida, arguing that the only way it can legally assume any duties which were the responsibility of the engineer of record is by satisfying the formal requirements set out in Chapter 61G15. Dkt. 238 at 12296. Barton Malow also relies on the testimony of Rene Basulto, Rosemont’s HVAC expert who stated that there was no delegated engineer on the project, and the testimony of Warren Hahn, Barton Malow’s HVAC expert who stated that delegating an engineer is a formalized process which must be done in writing by both parties, which did not occur here. *Id.* at 12285.

Rosemont points to evidence that Barton Malow prepared submittals to substitute the LG System specified in the contract with a Samsung System, that the engineer of record required that Barton Malow assume design responsibility as a condition of approving the alteration, and that Barton Malow unilaterally closed out the submittals and proceeded to install the Samsung System without approval. Dkt. 247 at 16555–56, 16565–66.

In short, the Court finds there are disputed issues of fact concerning whether Barton Malow went outside the scope of the contract and assumed responsibility for the HVAC redesign. And so, the Court denies Barton Malow’s request for summary judgment on Rosemont’s negligence claim.

### C. Glass Block's Impact on Rosemont's Lost Profits

Glass Block argues that there is no record evidence linking any alleged defect in the exterior concrete tile work it performed to any of Rosemont's lost profits, and that Barton Malow thus cannot pass through any damages it may owe to Rosemont to Glass Block under the indemnification agreement. Dkt. 239 at 12443–44. Glass Block cites the report of Rosemont's expert, Mr. Wright, in which he opines that the exterior tile must be removed and replaced in the amount of $466,534 but does not opine that Rosemont lost profits because of the exterior tile's condition. Dkt. 239 at 12443. Glass Block adds that Mr. Wright calculated lost revenue related to the lobby closure that resulted from the interior tile work, and that he performed no similar calculation regarding the exterior tile. *Id.*

In its response, Barton Malow points to the deposition of Mazda Ekbatani, the president and co-owner of Rosemont, which contains the following exchange:

> Q: I will represent to you that Glass Block Warehouse was alleged to have installed the exterior wall tiles at the hotel.
>
> A. Yeah.
>
> Q. And I don't want to get too deep into any of the issues concerning the actual construction defects, we will refer to your expert for those issues, but as it relates to the exterior wall tile, have you been able to quantify any damages that the hotel has suffered with regard to revenues?

> A. Absolutely. If you go on Google and reference some images of the exterior of the hotel that the guests actually post, if I was a guest wanting to book this hotel with an exterior tile that looks like that, I would definitely give it a second thought. I would question that five-star category of the hotel.

Dkt. 254 at 16778–79. Barton Malow contends that this testimony is sufficient to establish a disputed issue of fact as to whether Rosemont's lost profits are tied to Glass Block's work. *Id.* at 16779.

While not referenced in Barton Malow's argument, Exhibit A of Barton Malow's response contains further excerpts from Mr. Ekbatani's deposition. Dkt. 254-1 at 16793–97. Directly after the excerpt Barton Malow includes in its argument is the following exchange:

> Q: And so has that been a complaint that you have received from guests, the exterior wall tile?
>
> A. Absolutely not, because no guest that makes a decision like that is in interaction with me. This is prior to making a sale, prior to making a decision for them to come in.
>
> Q. And have you been able to quantify at all what that level of damage to your revenues is?
>
> A. Absolutely not, no. I don't have that level of expertise.

Dkt. 254-1 at 16796–97.

This issue turns on the admissibility of Mr. Ekbatani's testimony at trial. *Equity Lifestyle Props., Inc. v. Fla. Mowing And Landscape Serv., Inc.*, 556 F.3d 1232, 1243 (11th Cir. 2009). In determining if evidence is admissible, the Court applies the same standards that would apply at trial. *Munoz v. Int'l All. of Theatrical Stage Emp. & Moving Picture Mach. Operators of U. S. & Canada*, 563 F.2d 205, 207 (5th Cir. 1977).[4]

Opinion testimony by lay witnesses is governed by Federal Rule of Evidence 701. That rule limits lay witness testimony to opinions that are: (a) "rationally based on the witness's perception"; (b) "helpful to clearly understanding the witness's testimony or to determining a fact in issue"; and (c) "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Notably, "Rule 701 does not prohibit lay witnesses from testifying based on particularized knowledge gained from their own personal experiences." *United States v. Hill*, 643 F.3d 807, 841 (11th Cir. 2011); *see also Agro Air Assocs., Inc. v. Houston Cas. Co.*, 128 F.3d 1452, 1455 (11th Cir. 1997).

Mr. Ekbatani's testimony is not based on his own perception or personal experience. He is speculating, which he acknowledged when he testified that he had received no complaints from guests or others about the exterior tile. Speculative opinion testimony by lay witness is generally

---

[4] All decisions of the former Fifth Circuit issued before October 1, 1981, are binding precedent. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

inadmissible. *Dunn v. Stewart*, 791 F. App'x 879, 882 (11th Cir. 2019) (citing, among other authorities, *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993)). Furthermore, the testimony is not admissible as expert testimony because Mr. Ekbatani acknowledges he lacks the expertise to quantify damages associated with the defective exterior tile work. Dkt. 254-1 at 16796–97.

Glass Block has therefore established there are no disputed issues of material fact regarding whether a portion of Rosemont's lost profits is attributable to Glass Block's exterior tile work. Summary judgment on this issue is well taken.

Accordingly, it is **ORDERED**:

1. Barton Malow's Motion for Partial Summary Judgment (Dkt. 238) is **DENIED** to the extent the motion seeks summary judgment on Rosemont's negligence claim;

2. Glass Block's Motion for Partial Summary Judgment (Dkt. 239) is **GRANTED in part** and **DENIED in part**;

3. Summary judgment is granted in favor of Glass Block and against Barton Malow on the issue of lost profits caused by Glass Block's alleged defective exterior tile work; and

4. Summary judgment is denied as to Glass Block's fourteenth affirmative defense pending the resolution of Rosemont's negligence claim against Barton Malow.

**DONE** and **ORDERED** in Orlando, Florida, on November 9, 2026.

ROBERT M. NORWAY
*United States Magistrate Judge*

Copies to:

Counsel of Record