UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ROSEMONT HOTELS, INC.,
Plaintiff/Counter-Defendants,
v.
BARTON MALOW COMPANY,
Defendant/Counter-Plaintiffs,

BARTON MALOW COMPANY,
Third-Party Plaintiff/Counter-Defendant,
v.
DEL AIR HEATING; AIR CONDITIONING & REFRIGERATION, LLC; GLASS BLOCK WAREHOUSE, L.C.; HABITECH SYSTEMS, INC.; HARTFORD SOUTH, LLC; HEICHEL PLUMBING, INC.; LOTSPEICH CONTRACTING, INC.; and SPECTRA HOLDINGS, INC.,
Third-Party Defendants,
and
CM GLAZING, LLC,
Third-Party Defendant/Counter-Plaintiff,

LOTSPEICH CONTRACTING, INC.,
Fourth-Party Plaintiff,
v.
GOUDREAU PLASTERING, INC.
Fourth-Party Defendant.

Case No. 6:23-cv-1073-RMN

# ORDER

This matter is before the Court without oral argument on Plaintiff Rosemont Hotels, Inc.'s Motion for Partial Summary Judgment on Defendant Barton Malow Company's Eighth Affirmative Defense of Setoff (Dkt. 236). Barton Malow Company filed a response in opposition (Dkt. 255) to which Rosemont replied (Dkt. 266).

## I. BACKGROUND

This case arises from the construction of the Ette Hotel in Kissimmee, Florida. Dkt. 25 at 4981–82. Rosemont, as owner and developer of the hotel, hired Barton Malow as the project's general contractor. *Id.* Rosemont filed a complaint against Barton Malow[1] alleging various causes of action related to the construction of the hotel. *Id.* at 4979–82. This order addresses only one part of the dispute.

According to Barton Malow, it asserted claims during the construction of the hotel that remain unsettled. Dkt. 255 at 16799. Those claims are represented here in two ways. First, Barton Malow claims them, in its eighth affirmative defense, as a set-off from any recovery Rosemont receives on its claims. Dkt. 34 at 8926. Second, Barton Malow seeks to recover the amounts it is due from those unsettled claims in certain counterclaims. Dkt. 2 at 476–87; see also Dkt. 262 at 17610–11 (granting motion to amend the pleadings

---

[1] The Amended Complaint also includes Jonathan Nehmer & Associates, Inc., and RTM Engineering Consultants, LLC as defendants, both of whom have since been terminated from the case. *See* Dkt. 118.

so that they include Barton Malow's counterclaims and Rosemont's responses).

The grounds for Barton Malow's set-off and counterclaims are unclear. The affirmative defense includes no facts describing the basis for the alleged set-off. *See* Dkt. 34 at 8926. In its breach of contract counterclaim, Barton Malow's seeks damages for (1) delays attributable to Rosemont, (2) costs associated with allegedly improperly rejected and disputed proposed change orders, (3) funds withheld by Rosemont when it modified or reduced Barton Malow's payment applications, and (4) additional costs associated with "General Conditions and General Requirements." Dkt. 2 at 486. In its second counterclaim, Barton Malow contends the parties' course of dealings amounted to a contract implied in fact and that it is owed sums for extra work that was performed, but not paid for, during construction. *Id.* at 487–89. Damages for this counterclaim include costs associated with work identified in 40 proposed change orders issued during construction that were refused by Rosemont, which Barton Malow included in Change Order 23 in January 2023. *Id.* at 488; *see also id.* at 481, 483; Dkt. 2-3 at 965–66 (Change Order 23). A third counterclaim seeks damages on an unjust enrichment claim. *Id.* at 489–90.

Rosemont now moves for summary judgment on the set-off defense, which motion is ripe for adjudication. Dkt. 236.

## II. LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Se.*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252).[2]

---

[2] According to the Eleventh Circuit, a more relaxed summary judgment standard applies to cases that proceed to trial without a jury. *See Coats & Clark, Inc. v. Gary*, 755 F.2d 1506, 1509–10 (11th Cir. 1985) (citing *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123–24 (5th Cir. 1978)). In a non-jury setting where "there are 'no issues of witness credibility,' the Court may make

## III. ANALYSIS

The parties' disputes concerning the set-off defense center on whether certain events that occurred during construction satisfied or failed to satisfy the terms of the contract. Rosemont contends Barton Malow waived its claims to any additional funds in three ways. Dkt. 236 at 10949–59. Rosemont argues Barton Malow's claims were (1) untimely under the contract, (2) waived by Barton Malow when it accepted prior change orders to the contract, and (3) waived because the claims were incomplete and not properly substantiated, as required by the contract. *Id.* For its part, Barton Malow contests each argument. Dkt. 255 at 16811–16818. It contends its claims were timely, that each change order contained specific reservation of rights to the disputed claims, and that its notices, together with other records, constituted properly substantiated claims. *Id.*

All these arguments rely on the parties' interpretation of the construction contract. The Court first reviews the principles of contract

---

factual determinations and draw inferences at the summary judgment stage based on the affidavits, depositions and other evidence in the record, because a 'trial on the merits would reveal no additional data' nor 'aid the determination.'" *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1251 (11th Cir. 2016) (quoting *Nunez*, 572 F.2d at 1123–24). Because the Court believes credibility issues are raised by the record here, it applies the summary judgment standard for cases that will be tried before a jury.

interpretation under Florida law.[3] It then construes the applicable contract provisions. Finally, the Court addresses the parties' arguments.

### A. Contract Interpretation

In Florida, contract interpretation is a matter of law to be determined by the court. *See DEC Elec., Inc. v. Raphael Constr. Corp.*, 558 So. 2d 427, 428 (Fla. 1990). It is governed by the parties' intent. *L & H Constr. Co. v. Circle Redmont, Inc.*, 55 So. 3d 630, 634 (Fla. 5th DCA 2011). The best evidence of the parties' intent is the contract itself. *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996) (explaining that courts should interpret a contract according to its plain meaning "because the terms of a contract provide the best evidence of the parties' intent"). For this reason, the parties' intent must be ascertained from words used in the contract, absent some ambiguity. *Wheeler v. Wheeler, Erwin & Fountain, P.A.*, 964 So.2d 745, 749 (Fla. 1st DCA 2007).

The determination of whether the contract term is ambiguous is also a question of law for the court. *Strama v. Union Fid. Life Ins. Co.*, 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001). If the facts of the case are not in dispute, the court may resolve the ambiguity as a matter of law. *See id.* (citing *Ellenwood v. S. United Life Ins. Co.*, 373 So.2d 392, 394 (Fla. 1st DCA 1979)). But where there is an issue of fact concerning the parties' intent,[4] an

[3] The contract is governed by Florida law. Dkt. 25-1 at 5054.

[4] In Florida, if the terms of a contract are ambiguous or susceptible to different interpretations, then parol evidence is admissible to "explain, clarify

ambiguity cannot be resolved on summary judgment. *Id.* (quoting *Universal Underwriters Ins. Co. v. Steve Hull Chevrolet, Inc.*, 513 So.2d 218, 219 (Fla. 1st DCA 1987)).

**B. Interpretation of the Applicable Contract Provisions**

The parties' arguments turn on the parts of the contract concerning claims made during construction. The Court first describes the contract provisions and then interprets them.

**1. The Applicable Provisions**

The contract terms are set forth principally in two standard forms, an "Agreement" and "General Conditions." Dkt. 25-1 at 4997–5015 (AIA Document A102), 5016–59 (AIA Document A201). The agreement requires that changes to the contract price must be made in the manner provided in Article 7 of the General Conditions. *Id.* at 5003 (Section 6.1, for adjustments to the contract price, and Section 6.2, for adjustments to subcontracts).

Article 7 of the General Conditions provides for "Changes in Work." Dkt. 25-1 at 5040. Section 7.1.1 provides that such changes shall be made by (1) a change order, (2) a construction change directive, or (3) an "order for a minor change in work." *Id.* A change order requires agreement, whereas a construction change directive requires only the agreement of Rosemont and its architect. *Id.* (Section 7.1.2).

---

or elucidate" the ambiguous term. *Friedman v. Va. Metal Prods. Corp.*, 56 So. 2d 515, 517 (Fla. 1952).

The contract provides that any change order must be in writing and signed by Rosemont, Barton Malow, and the project architect. Dkt. 25-1 at 5040 (Section 7.2.1). Once signed, a change order memorializes an agreement on three things: (1) the change in work; (2) the change in the contract price (called, the "Contract Sum"), if any; and (3) the change in time allowed to complete the contract (called, "Contract Time"). *Id.* The contract further provides,

> [i]f any Change Order, signed by the Owner and the Contractor, results in or contains an increase in the Contract Sum, the amount of such increase shall be conclusively deemed and held to include the Contractor's costs of and for all applicable taxes, bond premiums, supervisions, overhead, profit, labor, labor impact and materials related to the Change Order and the additional work required and the Contractor shall be conclusively deemed and held to have waived any known Claim for any additional sum for delays, disruptions, acceleration, loss of productivity, ripple effect, inefficiency or any other matter arising out of such Change Order unless such claim is specifically reserved in such Change Order.

*Id.* at 5041 (Section 7.2.3).

Article 8 of the General Conditions addresses the timeliness of the project. Dkt. 25-1 at 5042–44. Section 8.2.1 confirms that timely completion of the project is a material term of the contract, and that Barton Malow confirms the time allowed is reasonable. *Id.* at 5042. But the contract

provides Barton Malow with a mechanism to account for delays and request more time to complete construction. Dkt. 25-1 at 5042–43.

Section 8.3.1 provides that:

> If the Contractor is delayed at any time in the commencement or progress of the Work due to causes outside of the Contractor's control, or the control of its subcontractors or suppliers, the Contractor may submit a Change order requesting an extension of the Contract Time and/or an increase in the Contract Sum in accordance with the procedures established in Articles 7 and 15. . . .

Dkt. 25-1 at 5042–43. The next subsection also requires claims "relating to time" to be "made in accordance with the applicable provisions of Article 15," subject to certain conditions. *Id.* at 5043. The contract also requires Barton Malow's

> written claims for extension of Contract Time [to] be accompanied by detailed dates, correspondence, notice, and any other data which provides proof of the events which are the basis for the claim and details the critical path Work items on the schedule, justifying the time extension. Said requests shall specifically detail the extension of the Critical Path of the Project caused by the events which underlie the time extension request. . . .

*Id.* (Section 8.3.4). The contract states further that "[a]ny claim not including said data shall be deemed waived, until such time as [Barton Malow] provides such data in accordance with" the contract. *Id.*

Lastly, Article 15 of the General Conditions governs claims and disputes. Dkt. 25-1 at 5057–59. This part of the contract defines a claim as "a demand or assertion by one of the parties seeking, as a matter of right, payment of money, a change in the Contract Time, or other relief with respect to the terms of the Contract." *Id.* at 5057 (Section 15.1.1). The term "also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract." *Id.* This section requires the "party making [a] Claim" the "responsibility to substantiate" it. *Id.*

Article 15 also imposes a notice requirement. Dkt. 25-1 at 5057. Section 15.1.3.1 states:

> Claims by either [Rosemont] or [Barton Malow], where the condition giving rise to the Claim is first discovered prior to expiration of the period for correction of the Work set forth in Section 12.2.2, shall be initiated by notice to the other party with a copy sent to the Architect, if the Architect is not serving as the Initial Decision Maker. Claims by either party under this Section 15.1.3.1 shall be initiated within 21 days after occurrence of the event giving rise to such Claim or within 21 days after the claimant first recognizes the condition giving rise to the Claim, whichever is later. Any claim(s) not initiated within the time limits set forth herein are waived.

*Id.* The contract requires notice if the condition giving rise to the claim is discovered after construction is completed. *Id.* (Section 15.1.3.2).

For claims for additional cost, Article 15 requires Barton Malow to provide notice in accordance with Section 15.1.3 before it may proceed with the work that is the subject of the claim. Dkt. 25-1 at 5058 (Section 15.1.5). For claims for additional time, Barton Malow must also provide notice in accordance with Section 15.1.3. *Id.* (Section 15.1.6). Any such claim must "include an estimate of cost and of probable effect of delay on progress" of the construction. *Id.* In the case of a "continuing delay," the contract provides that "only one Claim is necessary." *Id.*

**2. The Interpretation**

The dispute requires the Court to determine, based on the contract, what constitutes a claim, when a claim is presented, and how a party waives its claims. Each issue is addressed in turn.

**a. What is a claim?**

The contract broadly defines the term claim in Article 15 of the General Conditions. Dkt. 25-1 at 5057 (Section 15.1.1). Claims are initiated by the issuance of a notice. *Id.* at 5057 (Section 15.1.3.1); *see also id.* at 5027 (noting, in Section 1.6.2, that the notice of claim required by Section 15.1.3.1 shall be in writing).

The contract distinguishes claims for additional costs from claims for additional time. *Id.* at 5058 (Sections 15.1.5 and 15.1.6). The contract does not explicitly require claims for additional costs to contain particular information, stating only that notice must be given before work may proceed

on "the portion of the work that is the subject of the claim." *Id.* at 5058 (Section 15.1.5).

For claims for additional time, however, the contract requires more. To start, Section 15.1.6 requires any such claim to "include an estimate of cost and probable effect of delay on progress" of construction. Dkt. 25-1 at 5058 (Section 15.1.6). Claims for additional time are also controlled by certain provisions found in Article 8. *Id.* at 5042–43. Such claims must be made in accordance with the requirements of Article 15. *See id.* (Sections 8.3.1 and 8.3.2). Section 8.3.4 requires Barton Malow to provide particular information in support of claims for additional time, including "detailed dates, correspondence, notice, and any other data which provides proof of the events which are the basis for the claim and details the critical path Work items on the schedule," as well as a detailed discussion of "the extension of the Critical Path of the Project." *Id.* at 5043.

The parties' arguments suggest they dispute whether a claim must be made in a single document or if several documents, considered together, may constitute a claim. The plain language of the contract provides some guidance. Section 8.3.4 says the required information shall accompany claims for additional time. *See* Dkt. 25-1 at 5043. More precisely, the provision uses a passive voice verb phrase in the simple or modal future tense based on the transitive verb "accompany." That word means "to go with as an associate or companion," "to cause to be in association," or "to be in association with." Merriam-Webster.com Dictionary, https://www.

merriam-webster.com/dictionary/accompany (last visited Nov. 5, 2026). The term contemplates a claim may be supported by additional documents containing the necessary information.

**b. When is a claim presented?**

Three provisions control the timing of the presentation of claims. The first addresses timeliness. Section 15.1.3.1 requires a party making a claim under the contract to provide notice of the claim no more than "21 days after occurrence of the event giving rise" to the claim or "21 days after the claimant first recognizes the condition giving rise to the claim." Dkt. 25-1 at 5057. If a notice is not provided within this time, the claim is "waived." *Id.*

Another provision provides that claims for additional time are "waived" until "such time as [Barton Malow] provides such data in accordance with the Contract Documents." Dkt. 25-1 at 5043 (Sction 8.3.4). The phrase "such data" plainly refers to the information required by Section 8.3.4—detailed dates, correspondence, etc. When read as a whole, the third sentence of Section 8.3.4 means that time claims are not considered ripe or complete until all the information required by that section is presented by Barton Malow.

Lastly, Section 15.1.2 requires all claims to be asserted in accordance with the agreed dispute resolution method or within 10 years after substantial completion of construction. Dkt. 25-1 at 5057.

**c. May a claim be waived?**

The contract provides for the waiver of claims in two circumstances. First, as noted above, a claim for which a written notice was not served timely, is waived. Dkt. 25-1 at 5057 (Section 15.1.3.1).

Second, Article 7 of the General Conditions provides for waiver of certain costs once a Change Order is signed. Dkt. 25-1 at 5041. Under Section 7.2.3, if a change order "results in or contains an increase in" the contract price, then the agreed sum is "deemed and held to include [Barton Malow's] costs of and for all applicable taxes, bond premiums, supervisions, overhead, profit, labor, labor impact and materials related to the Change Order." *Id.* The provision provides further that, by signing a Change Order, Barton Malow shall "waive[ ] any known Claim for any additional sum for delays, disruptions, acceleration, loss of productivity, ripple effect, inefficiency or any other matter arising out of such Change Order unless such claim is specifically reserved in such Change Order." *Id.*

The main effect of this provision is straightforward. Each Change Order conclusively resolves any claim from Barton Malow for the work authorized by the Change Order except that Barton Malow may preserve any delay claim that it may have with regard to such work by specifically reserving such a claim in the Change Order.

And as noted above, there is another provision in the contract that refers to "waiver." Dkt. 25-1 at 5043. For claims for additional time, Section 8.3.4 states that any such claim that is not accompanied by the

required information "shall be deemed waived, until such a time as [Barton Malow] provides such data in accordance with" the contract. *Id.* By its plain terms, the "waiver" provided in this section is temporary. It lasts only to the extent that Barton Malow does not provide the information required by Section 8.3.4. Once Barton Malow does so, the "waiver" goes away. In other words, Section 8.3.4 provides that a claim for additional time asserted by Barton Malow does not mature or ripen until such a time as Barton Malow provides the required data.

### C. Analysis of Rosemont's Arguments for Summary Judgment

Rosemont's arguments fall into three categories: (1) the timeliness of certain claims; (2) the wavier of others; and (3) whether certain claims were properly substantiated. The Court addresses each category in turn.

#### 1. Timeliness

To start, Rosemont contends Barton Malow did not provide written notice of its claims within the 21-day period required by Section 15.1.3.1. Dkt. 236 at 10950, 10952–53. Rosemont's arguments relate to two letters and a proposed change order, each of which is discussed in turn.

Rosemont first attacks an August 24, 2020 letter, contending, without citation to an evidence or testimony, that "none of the impacts identified in the August 24, 2020 letter related to events occurring within the preceding 21 days." *Id.* at 10953. Rosemont has not shown it is entitled to summary judgment on this issue. As a general matter, an attorney's bare assertion cannot establish a disputed issue of material fact. *Lehrfield v. Liberty Mut.*

*Fire Ins. Co.*, 396 F. Supp. 3d 1178, 1183 (S.D. Fla. 2019) ("[A]ttorney argument is not evidence.") (citing *Bryant v. U.S. Steel Corp.*, 428 F. App'x 895, 897 (11th Cir. 2011)).

And more specifically, Rosemont must do more than offer the letter itself to prove there are no disputed material facts. Under the contract, claims are initiated by written notice. Dkt. 25-1 at 5057. Rosemont thus must offer testimony or evidence that establishes that each cost identified in the August 24, 2020 letter occurred or was known to Barton Malow more than 21-days prior. *See* Fed. R. Civ. P. 56(c)(1). Because Rosemont has not done so, summary judgment is denied as to this issue.

Rosemont next attacks the timeliness of a letter dated March 24, 2021. Dkt. 236 at 10953. Citing once again only to the letter itself, Rosemont asserts that "the underlying events supporting the claim were already untimely when first identified in August 2020." *Id.* This too is insufficient, and summary judgment is denied for the same reason as it is denied above.

Lastly, Rosemont seeks summary judgment on certain costs sought by Barton Malow in a proposed change order sent on February 1, 2023, in part because the claim was not timely. Dkt. 236 at 10956–59. Rosemont offers testimony that this proposed change order included a claim for "additional GC's and GR's" that "was not previously submitted for review." Dkt. 236-14 at 11391. In response, Barton Malow points to evidence that this claim seeks to recover costs for "an additional 343 days of Contract Time" covering costs associated with proposed change orders that were rejected by

Rosemont. Dkt. 255 at 16818. Given Section 15.1.3.1 requires only written notice and the resolution of the parties' other arguments, the Court finds there is a disputed issue of material fact concerning the timeliness of these costs.

**2. Waiver Regarding Change Orders**

Next, Rosemont contends that all of the costs identified in Barton Malow's March 24, 2021 letter were waived because that letter seeks "recovery for amounts from [proposed change orders] that had already been incorporated into executed Change Orders, and were therefore waived under section 7.2.3." Dkt. 236 at 10954. This argument suffers from the same lack of support that plagues its timeliness argument. Rosemont has not offered testimony or evidence that shows each disputed cost was presented in a prior proposed change order and subsequently incorporated into an agreed Change Order. Without such a showing, it has not met its burden.

But summary judgment should be denied for another reason: Section 7.2.3 contains a latent ambiguity. In Florida, an ambiguity in a contract can be patent, latent, or fall somewhere in between. *MDS (Canada), Inc. v. Rad Source Techs., Inc.*, 822 F. Supp. 2d 1263, 1297 (S.D. Fla. 2011), *aff'd in part, question certified*, 720 F.3d 833 (11th Cir. 2013), *certified question answered*, 143 So. 3d 881 (Fla. 2014), *and aff'd*, 579 F. App'x 700 (11th Cir. 2014) (citing *Ace Elec. Supply Co. v. Terra Nova Elec., Inc.*, 288 So. 2d 544, 547 (Fla. 1st DCA 1973)). A patent ambiguity appears on the face of the contract. *Id.* (citing *Crown Mgm't Corp. v. Goodman*, 452 So.

2d 49, 52 (Fla. 2d DCA 1984)). "A latent ambiguity exists where a contract fails to specify the parties' rights or duties in certain situations and extrinsic evidence is necessary to interpret possible meanings." *Id.* (citing *Forest Hills Utils., Inc. v. Pasco Cnty.*, 536 So. 2d 1117, 1119 (Fla. 2d DCA 1988)).

Section 7.2.3 is structured such that a Change Order must include at least two terms, "the amount of such increase" to the contract price and the "additional work required." Dkt. 25-1 at 5041. The provision provides that Barton Malow waives "any known Claim for any additional sum for delays, disruptions, . . . or any other matter arising out of such Change Order . . . ." *Id.* While this phrase is clearly intended to be capacious, it does not provide a clear boundary for at least one narrow category of disputes.

For instance, Rosemont's arguments are based on the understanding that the waiver provided by Section 7.2.3 applies to all costs raised and negotiated by the parties during the process leading up to the Change Order. Barton Malow, on the other hand, appears to contend the waiver extends only to those items of work specifically included in a Change Order. Both interpretations of Section 7.2.3 appear plausible from the face of the contract, and so the contract does not "specify the rights and duties of the parties" with regards to costs that were raised and negotiated by the parties but not included in a Change Order.[5] *Wheeler*, 964 So. 2d at 750 (quoting

---

[5] This ambiguity is narrow but at issue here. Other costs—for instance, identified in a Change Order as "additional work required"—are plainly subject to the waiver and reservation requirements of Section 7.2.3.

*Jenkins v. Eckerd Corp.*, 913 So. 2d 43, 52 (Fla. 1st DCA 2005)). Because there is a latent ambiguity, there is a disputed question of material fact regarding the correct interpretation of the contract. *Id.*

### 3. Substantiated Claims

Lastly, Rosemont contends that Barton Malow is not entitled to recovery on its set-off defense with regard to the March 24, 2021 letter because Barton Malow did not provide the information required by Section 8.3.4. Dkt. 236 at 10954–56. According to Rosemont, the contract requires Barton Malow to support a claim for additional time with "actual, itemized, and verifiable backup and costs." *Id.* at 10956.

The Court is unconvinced. Rather than the specific data Rosemont claims are required, the contract states a written claim must be "accompanied by detailed dates, correspondence, notice, and any other data which provides proof of the events which are the basis of the claim and details the critical path Work items on the schedule." Dkt. 25-1 at 5043. Once Barton Malow supplies that information, its claim for additional time ripens. *See id.* Among other things, the March 24, 2021 letter was accompanied by a report detailing the project's critical path, thereby raising a dispute of material fact. Summary judgment is therefore denied on this issue.

Rosemont also challenges costs asserted in Barton Malow's February 1, 2023 proposed change order. Dkt. 236 at 10958–59. Citing testimony in a declaration, Rosemont contends that the proposed change order was not accompanied by supporting data, correspondence, or critical path analysis.

*Id.* Rosemont also claims Barton Malow never provided the information required by Section 8.3.4. *Id.* (citing declaration testimony).

In response, Barton Malow points to what it calls the project's "PCO Log" as evidence that it continued to track all disputed costs. Dkt. 255 at 16818. This evidence, however, does not respond fully to Rosemont's argument for summary judgment.

Where, as here, a movant has met its burden under Rule 56(a), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by" either "(A) citing to particular parts of materials in the record . . ." or "(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

To the extent that it wishes to dispute Rosemont's contention the costs in the February 1, 2023 proposed change order never ripened into a claim, Barton Malow must come forward with testimony or other evidence that establishes it complied with Section 8.3.4's information requirement. That requirement includes, among other things, the submission of an analysis that "detail[s] the extension of the Critical Path of the Project caused by the events which underlie the time extension request." Dkt. 25-1 at 5043. Yet Barton Malow does not identify any correspondence, report, or other

documentation that it contends provides the required critical path information. *See* Dkt. 255 at 16817–18; *see also id.* at 16815 (discussing, in a different context, certain updated construction schedules, but providing no pinpoint citations to those schedules, in violation of the Court's case management and scheduling order).[6] For this reason, the court finds Barton Malow has not shown there is a genuine dispute that the costs identified in its February 1, 2023 proposed change order were properly supported as required by Section 8.3.4. Thus, summary judgment is appropriate.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that:

1. Rosemont's Motion for Summary Judgment (Dkt. 236) is **GRANTED in part** and **DENIED in part**;

2. The motion is granted only to the extent that it seeks summary judgment on whether the costs identified in Barton Malow's February 1, 2023 proposed change order ripened into a claim, as provided by Section 8.3.4 of the contract's General Conditions; and

---

[6] Setting aside the failure to provide pinpoint citations to the construction schedules, Section 3.10.1.1 of the General Conditions states that such schedules include only "extensions and reductions of the contract Time which have previously been *approved by duly executed Change Order*." Dkt. 25-1 at 5033 (emphasis added). And so, Barton Malow cannot rely on the updated project schedules to support claims for additional time that were not part of a fully executed Change Order.

3. The motion is otherwise denied.

**DONE** and **ORDERED** in Orlando, Florida, on November 13, 2026.

ROBERT M. NORWAY
*United States Magistrate Judge*

Copies to:

Counsel of Record